Good morning, your honors. I am Mark Schneider, and I'm representing Marion Alexander. And under Pioneer v. Brunswick, my client did show excusable neglect and or good cause for filing her notice of appeal two days after the 60-day deadline as provided by federal rule of appellate procedure 4A-5. And the decision of the magistrate judge was unprecedented saying that it was not good cause or excusable neglect for a mentally ill SSI claimant to fail to stay in touch with her lawyer after her mother died and she became homeless. In other words, excusable neglect is something caused by inadvertence, mistake, or carelessness. And then it defined good cause as intervening circumstances beyond the party's control. The Supreme Court looked at the policy of the Bankruptcy Code, which was to preserve rather than forfeit rights. And the Supreme Court then adopted four of five of the Sixth Circuit equitable factors. They said that the court should consider all the circumstances, all the equitable circumstances, including, and it was not limited to, the danger of prejudice to the debtor, the length of the delay and impact on proceedings, the reason for delay, and whether the movement acted in good faith. And other equitable factors would be the purpose of the statute, the merits of the underlying appeal, and the mental status of the appellant. But the Supreme Court explicitly deleted a fifth factor articulated by the Sixth Circuit, which was whether clients should be penalized for their counsel's mistake or neglect. And the Supreme Court tells us that inadvertence, ignorance of rules, or mistakes of the rules do not usually constitute excusable neglect. And this was clearly intended to apply to lawyers and not clients. And actually in Pioneer, the Supreme Court found there was excusable neglect because the unusual notice on the bankruptcy form. Now in this court... Judge Clark, could I ask you, what's the rule that you would have us articulate if we were to rule in your paper? I think the rule should be when it's a mistake or inadvertence by the attorney, then that usually would not be excusable neglect. But when it's the client, you should look at what's the reason for the delay. And here it was that my client just didn't stay in touch with me at a tough period of her life. And I would look at excusable neglect, which is a mistake, inadvertence, that's excusable. So wouldn't that require the court to look into the party's individual circumstances and make an individualized determination based on what's happening during that 60-day period? Yes. Okay. And what would be sort of the standard? Is it the totality that if there's a disability or how is one to decide? I think it's the weighing of the equities, which is what the Pioneer court said. You look at all four of the factors, including the reason, and then you look at if it's a social security case, which is supposed to be construed favorably for the claimants under the act and is unusually protective. If it was a different statute, it might be different. And you look at the underlying appeal that many of the cases cited by social security in their brief involved people who didn't have good appeals. There were prisoner cases where they had an obligation to stay in touch with the court. But I think we should go back to the intent of the statute as explained by Pioneer, which if it's neglect, which means you made a mistake and it's excusable. And then you look at the factors of why it would be excusable. And I do think mental illness is a little bit confused how to apply that here, because we're talking about a 60 day period and failure to contact an attorney is sort of something that the party failed to do at any point during that window, as opposed to making a specific mistake. Does that make sense? So, so in other words, the facts would have to show that. But it's like a continuous neglect as opposed to a discrete one. I don't know if this makes a difference, but it seems like a different finding in my mind. Yes. So I think you look at the other courts that have weighed these factors in social security cases, and they all have looked at the mental illness as being a has a history of bipolar or cognitive impairment. I mean, she was not very smart. She had been receiving SSI already. So yeah, I agree with you that you have to look at it's a case by case determination. But I think just like in baseball, a tie goes to the runner, I think in social security cases, a tie should go to the claimant. Okay, thank you. So can I just so eventually your client contacted you on her own to inquire about her case, right? Right. And if she had done it, if she had done it three days earlier, there wouldn't have been a mistake in the deadline. So if she was able to do it on her own, then why should we illness as opposed to the neglect that anybody could exhibit that explains the failure to appeal in a timely fashion? Well, the judge could have looked at that. But if you read the record, you can see that that she has a long history of mental disability. And also, she was homeless during that period, her mom had me out of the blue. But that's neglect. And I think it's excusable in this case. And the Supreme Court intended this to be a flexible and liberal. I mean, also, at the same time, I mean, in this record, is that didn't she prosecute her appeal pro se at the agency level and meet all sorts of deadlines? Oh, well, that that was years before. And yes, she did. And she lost. Okay, so then can I just ask, so could you just maybe explain directly how it is that one of these diagnosed conditions, bipolar disorder, substance abuse disorder, whichever it is, like, how did that? How did that particular condition prevent her from contacting you earlier than she did? Well, it all you have to add it up together. And cumulatively, that led to her becoming homeless, not having a phone not having an address. But in the other cases, where magistrates and district courts have allowed late filing of Social Security because of mental illness. You didn't have to explain that. I think that she is disabled. The Social Security psychologist opined that her limits would significantly interfere with functioning. Isn't that enough? All right, thanks very much. You're welcome. Um, the commissioner says on page 28 of his brief that and I'm quoting, Alexander did not timely inquire into the status of her court case, or provide her attorney with updated contact information for nearly one and a half years. Is that statement accurate as to the one and a half years? No, she had, she had been in touch with me prior at various points. I don't believe she had. It was really after her mom died in December. That was the period but you know, she may have called me to say what's going on. And I did have her last known phone number and last known address. That was my understanding because it seemed to me that there, it seemed to be that there was only one year gap between May of 2018, when you filed on the merits in this case, and May of 2019, when Alexander contacted you for an update on the status of the case. You know, my client didn't really clients and SSI cases don't really get it of appealing from the agency to an ALJ, and then to the district court, and then to the Court of Appeals and I explained to them, but this is way above the pay grade of my clients to really get what's happening. I explained it's going to take a year or two to get a decision. And some people call me every other week and say, what's new? And I say, nothing, I'll call you when something happens. And I always say, call me, let me know if you have a change of address or a change of phone number. So it just happened in the two in the in the period after her mom died, she didn't get ahold of me. The district court says that your discussion of the mental illness involved, Alexander's mental illness, in the context here of your request for an extension was conclusory. Yeah, it wasn't conclusory that she's been found to be mentally ill. It's not like some of the other cases where a person just claimed, I was feeling depressed, or I had some problems. That is the whole underlying basis of this case. You know, of what she did in this case. So the court knew, I'm sorry. If I'm sorry, if the case, if we were to just, I'm not suggesting that this should be done, necessarily. But if, if we were to remand to the district court, for the consideration of your request, would you be able to provide further evidence that supported this claim? For instance, a declaration or testimony from Alexander regarding her mental status and housing situation during the relevant period? Yes, I talked to her yesterday. And I certainly could. But I don't think the court should remand. I think the court, we've had a year, one of the purposes of the rule of the extension rule is to avoid delay. And now we've delayed it another year and a half. And I would ask that this court accept the appeal, and then we go forward and take it and decide it on its merits. Thank you. You'll have two minutes in rebuttal. I will hear from Ms. Colenso. Thank you. Thank you, Your Honor. May it please the court, Daniela Colenso for the Commissioner. The district court did not abuse its discretion by denying Alexander's motion to extend her time to appeal the merits of her SSI claim, because Alexander failed to show that her delay was due to excusable neglect or good cause, as was her burden. The only reason Alexander's counsel relayed to the district court for her delay of at least a year since her civil action began, purportedly from Alexander herself, was that she had, quote, moved out of her mother's house last year when her mother died, and failed to give her attorney her new address and phone number. Such poor explanation was insufficient to prove excusable neglect or good cause. Moreover, Alexander does not demonstrate how simply providing her counsel with more recent contact information was outside of her control. Astoundingly, it is only counsel who conjecturally attributes Alexander's mental illness to the delay, stating, quote, I attribute her lack of diligence to her severe mental illness. At the same time, appellant's letter motion stated that her drug dependencies have been remissioned, further refuting this claim that her mental condition prevented timely appeal. Indeed, appellant made no other submission to the district court such as a supporting declaration, or even submitting such a declaration to this court expressly claiming her mental condition as a reason for her delay. Notably, too, she failed to reply to the commissioner's detailed opposition memorandum at all, providing no supporting arguments or evidence. Any such arguments now being raised for the first time on appeal are waived, and in any event, are unavailing. Lastly, although Alexander faults the district court for not making a searching inquiry of the record, she did not point to record evidence in her motion, nonetheless, arguments unavailing, because the record ended with the ALJ's November 2017 decision. Hence, the evidence in the record does not reflect Alexander's condition or her circumstances during the at least one year she failed to make a search inquiry of the record, or the agency of her civil action. I believe that concludes about two minutes, Your Honor. This is Judge Park. Isn't a district court required to inquire into the individual's circumstances to assess whether a delay was in someone's reasonable control? Your Honor, it was the appellant's burden to prove that she had that excusable neglect or knew good cause was a basis for her lack of diligence. The district court didn't have much to go on, and the appellant had the opportunity to submit a reply to the commissioner's detailed opposition, and chose not to, chose to submit a briefing on Smith versus Fall instead. In that case, the rationale provided was conclusory. As I stated, the only statement in the letter of motion provided by appellants regarding Alexander's mental state was her own attorney's conjecture that the reason for the delay was due to her mental illness. He had stated that he had spoken to Alexander herself. Alexander stated that the reason for her delay was her moving after her mother died the If there had been evidence presented of, that counsel is now saying is evidence of mental illness, would that have been sufficient for good cause? Well, I think that this is where the case Alexander's attorney put forth to this court, scaturreggio, is really important. There is an instance where mental illness will amount to excusable neglect and good cause. And the commissioner doesn't, agrees with Amici that there are cases where this would be true, where mental illness does rise to that level. And in scaturreggio, they had a pro se litigant who expressly stated that his major depression prevented him from timely filing his notice of appeal. But the district court didn't have that here. What the district court had were conclusory statements and conjecture from Alexander's counsel, rather than a statement from And that her opioid remission was in, opioid dependence was in remission, and that she was able to continue with her psychiatric treatment, suggesting that she continued to be an advocate for her own care and able to at least call her attorney to update him with contact information. I think at least for a year, she didn't do so. And we can't say that the what was before the district court showed that this kind of diligence in pursuing her claim was due to excusable neglect or good cause, but because of her mental illness or otherwise. Okay, thank you. So the commissioner got these extensions to file his motion late under Rule 6B, right? Yes. And Ms. Alexander was denied extension to file, to appeal under Rule 4A. I understand one is jurisdictional and the other is not, but they both permit extensions upon a showing of excusable neglect, and it's the same language. So wouldn't we expect the same standards to apply in the different kinds of extensions? Your Honor, under Federal Rule of Civil Procedure 6B, the court, the district court has considerable discretion and the local rules of the court of the Northern District Court simply state that the court will take any request under advisement. In contrast, the Second Circuit in And while there is discretion given to the district court, the discretion was within the bounds of that hardline standard where failure to follow the clear dictates of a rule will generally not. So the commissioner under Rule 6B sought an extension to file his motion nearly four weeks after the motion was due. So clearly, if the same standard was being applied to the commissioner that applied to Ms. Alexander under the other rule, he would not have gotten that extension, right? I'm not sure how the district court would have ruled based on that. They ruled under... Well, do you think it was excusable neglect for the commissioner to neglect to even apply for an extension until after the motion was due? Truthfully, I don't remember the circumstances of my having missed the deadline, and I don't remember the reasons I provided. I do know that counsel... I'm not sure counsel consented or not. I don't remember the circumstances. What I do know is that Rule 4A requires a hardline approach to looking at excusable neglect and good cause for failure, for lack of reasonable diligence in pursuing a claim. And here... You don't deny that they both require a showing of excusable neglect, right? It's the same language. Sure, yeah, sure. Okay, you said a moment ago that the commissioner agrees that sometimes mental illness would be excusable neglect. Is that as a matter of interpretation of the rule, or do you think that there is, as some have suggested, and I guess we have said in other contexts, that there's a constitutional due process right to tolling or an extension when the disability that's the basis of the claim is the reason why a claimant is late in making a filing? I think it's based on interpretation of the rule and based on this court and the district court's interpretation of the pioneer factors. The district courts have applied these factors to claimants within the Social Security disability context. It was the burden on Alexander to prove that her mental illness was the reason for her for her failure to file timely, which she did not prove. What sort of proof would that require? So do you dispute that she has a mental illness? Certainly not, but the record in this case only goes through November 2017. There's no information about the circumstances of her mental illness or otherwise from the time of her filing her civil action in December of 2017 and the time of her time to file the notice of appeal in May of 2019 that speak to why her mental illness precluded her. So perhaps the declaration in Scattereggio, the pro se claimant litigant, but he said my major depression prevented me from doing so. And the district court found that sufficient. And I think it's important to hear that. I'm sorry. So just the statements. So, yeah, I'm just trying to get at what you think is required. So so is a statement that my major depression prevented me from keeping in touch with my attorney. That would be sufficient. There needs to be more evidence about what the causal mechanism actually actually was. These are fact specific inquiries. So it really would depend. Scattereggio was a pro se litigant. So I so perhaps it's different than if a claimant is an appellant is represented. I'm not sure what that looks like. But what I do know is that none of this was provided to the district court when when given the opportunity. As you observe, as you observed a moment ago, Ms. Alexander's attorney said I attribute the delay to her mental illness. And you're saying that if Ms. Alexander herself had just said the delay was due to my mental illness, it would be a completely different case. I think it would have given the district court more to consider. But whether or not that would be sufficient, I'm not sure whether that alone would provide enough reason for at least a year not calling her attorney where the record shows she's an able advocate for herself. She was able to litigate her case at a time she's claiming now. She was so we should the court should see her as having been so ill that she couldn't have possibly reached out to her attorney over a year. She was able to act on her own behalf and litigate her her administrative appeal, at least through the first decision and first hearing. And she's been able to update the agency with her own with her change of address. And I think what's important here is that remand wouldn't serve a purpose because she's been denied on subsequent claims. She has filed in January of twenty eighteen and November of twenty eighteen. I think agency records suggest the latter of which she's brought pro se. So she's shown herself to be able to bring these claims, to update her information, to advocate for herself, to find housing for herself and her mother. During the same time that appellant asked the court to say she was so it sounds like if she in fact it sounds like you're saying that if she in fact had submitted an affidavit that the delay was due to my mental illness, you're saying that wouldn't be credible because she had met all these other deadlines and had had pursued her claim while having a mental illness. Is that right? There'd be something to connect the the time, the conditions and circumstances of that year to her mental illness that I believe would be sufficient to establish excusable neglect. In this case, it's a fact. Thank you. This is Judge Katzmann. I wanted to say that I'm frankly somewhat troubled by the government's behavior in this case, including from what we've heard today, not being able to remember certain of your own conduct with respect to this case where there seems to be a double standard, one that you think applies to the government and how it's supposed to behave and one that applies to litigants. You say on pages 28, 48 and 54 of your brief without writing any citation to the record said Alexander did not inquire into the status court case or provide her attorney with updated contact information or and I'm quoting nearly one and a half years. Where are you getting the one and a half years from and you provide any citation to the record for this assertion? Please help me understand. It's based on what a reading of the letter motion submitted by appellant's counsel stating that he was unable to contact her. She stated that she had moved out of her mother's house at least a year prior and she failed to contact her attorney. One would presume then that she hadn't contacted her attorney during the pendency of her civil action. And I apologize if perhaps I extended that range, perhaps a little too liberally, but at least for one year, sloppy, unacceptably sloppy. I apologize, your honor. Alexander filed her brief moving for the judgment on the pleading in May of 2018 and contacted her attorney to inquire about the status in May 2019. This is a one year gap. Are you asserting that Alexander's attorney filed the brief in May 2018 without any contact with his client? I don't presume to know Mr. Schneider's business practices. I can only go off of what he provided to the district court in his letter motion and what he said to me, which none of that suggested further contact with his client. And I apologize for the misinterpretation of that. But at the very least, Alexander did not show reasonable diligence for at least a year then. Let me pursue some of this. You say, and correct me if I'm wrong, that Alexander cannot show excusable neglect because she was diligent and timely in pursuing her administrative and federal court action until she didn't timely file the appeal here. Why doesn't the fact that Alexander was a diligent litigant and abided by all of her deadlines until now actually give support to her contention that unique difficult circumstances inhibited her timely filing here and that her failure should be excused? Because, your honor, the burden was on Alexander to say as much to prove that. The record shows that she was under similar external stressors, having been homeless, having been in and out of rehab, and struggling with drug addiction during the pendency of the administrative action. And she was able to litigate her claim and remain in contact with her counsel and with the agency. In contrast, the letter motion to the district court, which is all the district court had to go on, said that she had moved out of her home after her mother had passed away, and that's why she was unable to timely update her attorney as to her whereabouts. It was the burden of Alexander to prove that her mental illness or some other reason precluded her from timely filing. And the precedence of this court and the district court would not suggest that simply moving was sufficient to rise to the level of excusable neglect or good cause. Thank you. Thank you, your honor. Thank you. We will hear now two minutes. Thank you. Thank you, your honor. You know, normally in the Northern District of New York, in these cases, things like extensions, you do by a pro forma letter motion. And I was really stunned, Nide. To me, and from looking at the other cases, being a social security applicant for mental illness would be excusable. I mean, the standard is inadvertence, mistake or carelessness. And clearly, that's what she did. And I think that should be, under this case, it's so clear it should be excused, especially when the magistrate judge had read the complete record and knew about her underlying claim. And obviously, if I had to do it over again, I would have briefed that with the same amount of work I did in this case in this court. But the whole purpose of 4-5-A, 4-A-5, I'm sorry, is to allow it if it's a mistake of delineation. If it's a lawyer, then it's different. The lawyer is supposed to know the deadlines. The lawyer is supposed to file their papers on time. And that usually is not considered excusable. But for a person who's not an attorney to not be in touch with their lawyer for 4-5 months, that, to me, is clearly excusable. And when you consider the other equities, like the merits of her case and like the purpose of the Social Security Act, I think it was clear error. And I would ask you to accept the appeal, which has already been filed, and then let's get on and brief this case and try it a year and a half later. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision.